NOT FOR PUBLICATION (Doc. No. 19)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| WORLDSCAPE, INC., : | |
| : | |
| Plaintiff, : | Civil No. 10-4207 (RBK/KMW) |
| : | |
| v. : | **OPINION** |
| : | |
| SAILS CAPITAL MANAGEMENT, S.A.R.L., : | |
| STEPHANE LAMBERT, GREG NEELY, and : | |
| VONTOBEL GROUP, : | |
| : | |
| Defendants. : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Defendant VT Wealth Management ("VTWM") (a/k/a "Vontobel Group," "Vontobel," or "Bank Vontobel")[1] to dismiss Plaintiff WorldScape, Inc.'s ("WorldScape") Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Amended Complaint asserts state-law claims against VTWM for tortious interference with contractual relations, promissory estoppel, and aiding and abetting fraud. For the reasons expressed below, the Court will **DENY** VTWM's motion to dismiss in favor of limited jurisdictional discovery.

---

[1] The parties dispute whether it is VTWM or Vontobel that is a Defendant in this matter. For purposes of this Opinion only, the Court treats VTWM and Vontobel as the same entity.

1

I.  **BACKGROUND**

WorldScape is a New Jersey corporation with its principal place of business in New Jersey.  (Am. Compl. ¶ 10).[2]  Peter Rogina is the President of WorldScape.  (Id. ¶ 22). WorldScape hired Randall Platt of York Capital Management to assist in its operations.  (Id. ¶ 3). Sails Capital Management, Sárl ("Sails") is a Luxembourg corporation with its principal place of business in Luxembourg.  (Id. ¶ 11).  Stephane Lambert, a principal of Sails, is a citizen of Canada and maintains a residence in Switzerland.  (Id. ¶ 13).  Greg Neely, a second principal of Sails, is a citizen of Ohio.  (Id. ¶ 14).  VTWM is a Swiss corporation with its principal place of business in Switzerland.  (Id. ¶ 15).

In February 2008, Rogina met with Lambert and Neely, to discuss an investment in WorldScape.  (Id. ¶ 4).  In June 2008, Sails allegedly induced WorldScape to enter into a "stand still and no shop" letter agreement, which precluded WorldScape from soliciting other investments without Sails's consent.  (Id. ¶ 5; see Am. Compl. Ex. A).  In November 2008, WorldScape and Sails executed a "Subscription Agreement," pursuant to which Sails agreed to provide WorldScape with $10 million in cash in return for a substantial stake in WorldScape. (Id. ¶ 6; see Am. Compl. Ex. B).

Over the next eighteen months, Sails allegedly failed to perform under the Subscription Agreement.  (Id. ¶ 9).  As a result, WorldScape contacted representatives of Vontobel to obtain confirmation that Sails had the financial assets necessary to satisfy its contractual obligations.[3] (Aff. of Peter Rogina ¶ 10).  In April 2009, Sails provided WorldScape with a "Good Standing

---

[2] "WorldScape is a technology company founded to pursue immersive imaging and advanced processing for applications in defense, academia, and industry."  (Am. Compl. ¶ 10).  Immersive imaging is "the ability to capture and playback photo-realistic, real world environments for fully immersive training, security, education, and entertainment applications."  (Id. ¶ 1).
[3] According to WorldScape, Sails "claimed to possess 100,000,000 Swiss Francs in its account with . . . Vontobel" and "promised to fund its obligation to WorldScape by mid-January, 2009."  (Am. Compl. ¶ 6, 8).

2

Letter" to validate that Sails maintained accounts at Vontobel with assets sufficient to satisfy its obligation to WorldScape.  (Aff. of Peter Rogina Ex. B, at 1).  Two Vontobel Officers signed the Good Standing Letter, which "confirmed that Sails had over 100 million Swiss Francs and that it was a 'client in good standing' with Bank Vontobel AG."  (Opp'n Br. 4; see Aff. of Peter Rogina ¶ 12; Aff. of Peter Rogina Ex. B, at 2).

On May 5, 2009, Rogina initiated a telephone conference call with Lambert and Reto Marti ("Marti"), a client manager for Vontobel,[4] during which "Lambert authorized Marti to provide WorldScape with information regarding Sails and its accounts at Vontobel."[5]  (Opp'n Br. 4-5).  During that telephone call, and subsequent telephone communications, Rogina informed Marti of the "time-sensitive strategic business opportunities in which WorldScape was engaged and for which WorldScape was seeking funding."  (Opp'n Br. 5; see Aff. of Peter Rogina ¶¶ 13-15).  Moreover, Rogina claims that he told Marti that he was calling from New Jersey, that WorldScape was a New Jersey corporation with significant business opportunities and relationships with other New Jersey corporations, and that WorldScape was under significant pressure from its New Jersey-based debt holders.  (Id.; see Aff. of Peter Rogina ¶¶ 13-15).  Rogina also stated that during this initial telephone conference call, "Marti confirmed the authenticity of the Good Standing Letter and the facts contained therein."[6]  (Id.; see Aff. of Peter

---

[4] VTWM's CEO stated that Mr. Marti "departed VTWM in June 2009 for reasons unrelated to this lawsuit . . . ."  (Aff. 1 of Thomas Fedier ¶ 14).

[5] VTWM's CEO first stated that "[t]he business records do not indicate that Mr. Marti or any other employee of VTWM ever had contact with or provided information to representatives of World[S]cape . . . ."  (Aff. 1 of Thomas Fedier ¶ 6).  However, as WorldScape points out, VTWM's CEO then proceeded to affirm that Marti received five telephone calls between May and June 2009 "from a telephone number with New Jersey telephone prefix . . . ."  (Opp'n Br. 5 n.4; see Aff. 1 of Thomas Fedier ¶¶ 7-9).  Thus, WorldScape alleges that VTWM's CEO indeed confirmed "that Marti spoke with Rogina on at least [five] occasions."  (Opp'n Br. 5 n.4).

[6] In a follow-up email sent by Rogina to Marti, Rogina stated that Marti specifically confirmed the following:  (1) "Sails has an account in good standing with >$100M SF in assets;" (2) "[t]here is no more credit line availability on the current assets;" (3) "[t]he 500K Euro wire to WorldScape has NOT been sent and can only be sent after additional collateral is received into Sails' account;" (4) "aware[ness] of Sails' efforts to secure additional collateral,

3

Rogina ¶ 17).

On May 19, 2009, after Sails informed WorldScape that Vontobel had received a collateral trust bond secured by Sails' financial assets, Rogina called and subsequently emailed Marti for confirmation. (Am. Compl. ¶ 59). Marti did not respond to Rogina's calls and emails, and Vontobel did not transfer funds to WorldScape.[7] (Id. ¶ 60). On May 28, 2009, Rogina and Platt initiated a second telephone conference call with Marti. (Id. ¶ 62). Rogina affirmed that, on this telephone call, "Marti confirmed . . . (1) the receipt of collateral bonds[;] (2) the existing wire orders to WorldScape[;] and (3) the timing of the settlement date." (Opp'n Br. 6; see Aff. of Peter Rogina ¶ 31). In reliance on Marti's representations, WorldScape again extended the Payment Deadline terms to Sails, but Vontobel still did not transfer funds to WorldScape. (Opp'n Br. 6; see Aff. of Peter Rogina ¶ 31).

On June 8, 2009, Rogina and Platt initiated a final telephone conference call with Marti. (Am. Compl. ¶ 64). Rogina claims that, on this call, Marti told him that Sails had arranged for another bank to take possession of certain bonds necessary for Vontobel to release funds to WorldScape and that Marti expected the process to be complete by the following day. (Aff. of Peter Rogina ¶ 33). Rogina further affirmed that he and Platt "purposefully informed Marti of both WorldScape's reliance on his representations and the very serious consequences to WorldScape's operations and financial condition if Vontobel failed to wire the required funds."

---

but [no representation of] when the deal may close;" (5) "[o]nce the collateral is in place, and not before, Sails will need to authorize any and all wires from the account to WorldScape[;] [t]his would apply to the 500K Euros as well as the balance of the $5 Million due prior to 29 May 2009;" and (6) "[w]ires will be sent via an intermediary bank to WorldScape's account." (Aff. of Peter Rogina Ex. C., at 1).

[7] It should be noted that Rogina allegedly spoke with Marti on May 26, 2009, and Marti assured WorldScape that funding was imminent. (Am. Compl. ¶ 61). In a follow-up email sent by Rogina to Platt, Rogina wrote, "Reto said clearly that 'Mr. Lambert can do whatever he wants with his money, and that the [WorldScape] information was not required by Vontobel.'" (Id.). However, VTWM's CEO stated that "[t]here were no calls from the State of New Jersey received by Mr. Marti's company phone on . . . May 26, 2009 . . . ." (Aff. 1 of Thomas Fedier ¶ 8). WorldSpace did not respond to VTWM's claim that this alleged call between Rogina and Marti did not occur on May 26, 2009. (See Opp'n Br. 5-6).

4

(Id.). Again, Vontobel did not transfer funds to WorldScape. (Opp'n Br. 7). In mid-June 2009, Rogina learned that Marti no longer worked for Vontobel.[8] (Id.). Soon thereafter, Rogina stated that Lambert and Neely told him that Marti had begun working for Sails to assist in the process of facilitating the funding of WorldScape and other deals. (Aff. of Peter Rogina ¶ 38).

On August 17, 2010, WorldScape filed the Complaint. The Complaint alleges the following causes of action against Vontobel: (1) tortious interference with contract (Am. Compl. ¶¶ 94-98); (2) promissory estoppel (id. ¶¶ 99-103); (3) fraud (id. ¶¶ 104-110); and (4) aiding and abetting fraud (id. ¶¶ 111-16). WorldScape argues that Vontobel either: (1) "commited fraud by confirming that Sails had funds that it did not;" (2) "aided and abetted Sails's fraud"; or (3) "interfered with Sails's obligation to provide funding to WorldScape under the terms of the Subscription Agreement." (Opp'n Br. 7; see Am. Compl. ¶¶ 104-10, 111-16, 94-98). Furthermore, WorldScape argues that "[t]he actions of Vontobel caused substantial losses to WorldScape." (Opp'n Br. 7). VTWM argues that the Court should dismiss WorldScape's Amended Complaint because "under New Jersey law, there is no long[-]arm jurisdiction over [VTWM], and WorldScape cannot satisfy the due[-]process requirements of the Fourteenth Amendment of the United States Constitution." (Moving Br. 1-2). Moreover, VTWM argues that the Court cannot exercise general jurisdiction, specific jurisdiction, or jurisdiction under the "effects test" over VTWM. (Id. at 2). The parties submitted their respective briefs and the motion is ripe for review.

## II.     STANDARD

Generally, "once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish

---

[8] "When [Rogina] asked about the reason for [Marti's] leaving, [Rogina] was told simply, 'His contract was not renewed.'" (Aff. of Peter Rogina ¶ 37).

5

personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). The plaintiff may not "rely on the bare pleadings alone in order to withstand the defendant's . . . motion . . . ." Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984). Instead, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Id.

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. IMO Indus., Inc. v. Kierkert, AG, 155 F.3d 254, 259 (3d Cir. 1998). First, the court must apply the relevant state's long-arm statute to see if it permits the exercise of personal jurisdiction. Id.; see Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) ("[A] federal district court may assert jurisdiction over a non-resident of the state in which the court sits to the extent authorized by the law of the state.") (quoting Fed. R. Civ. P. 4(k)). Second, the court must apply the principles of due process. IMO Indus., Inc., 155 F.3d at 259. In New Jersey, this inquiry is conflated into a single step because "[t]he New Jersey long-arm rule extends to the limits of the Fourteenth Amendment Due Process protection." Carteret Sav. Bank, FA, 954 F.2d at 145 (citing N.J. Court R. 4:4-4(c)).

Due process permits the exercise of personal jurisdiction over a non-resident defendant where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (internal quotation marks and citations omitted). A plaintiff may establish personal jurisdiction by proving the existence of either general or specific jurisdiction. Id. To establish general jurisdiction, the plaintiff must show that the defendant's forum contacts are "continuous and substantial," which requires "significantly more than mere minimum contacts." Id. (citing Gehling v. St. George's

6

Sch. Of Med., Ltd., 773 F.2d 539, 541 (3d Cir. 1985); Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877 (3d Cir. 1981)).

On the other hand, establishing traditional specific jurisdiction through "minimum contacts" involves a three-part inquiry. Marten, 499 F.3d at 296. First, "the defendant must have purposefully directed his activities at the forum." Id. (internal quotation marks omitted). Second, the plaintiff's claim must "'arise out of or relate to' at least one of those specific activities." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Third, courts may consider "additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice." Id. (internal quotation marks and modifications omitted). These fairness factors include:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 205-06 (3d Cir. 1998) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)) (internal quotation marks omitted). Although "[a]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction," Grand Entm't Grp. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993) (citations omitted), "[j]urisdiction is proper . . . [only] where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King Corp., 471 U.S. at 475 (emphasis in original) (citations omitted). "The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

7

As an alternative means of establishing specific jurisdiction, the effects test involves a three-part inquiry.  Marten, 499 F.3d at 297 ("The effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth.").  First, "[t]he defendant [must have] comitted an intentional tort."  IMO Indus., Inc., 155 F.3d at 265.  Second, "[t]he plaintiff [must have] felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort."  Id.  Third, "[t]he defendant [must have] expressly aimed [their] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."  Id. at 266 (emphasis added).  Notably, "[a] plaintiff must satisfy the expressly aimed element first before a court needs to consider the other two factors."  Trico Equip., Inc. v. Manor, No. 08-5561, 2010 U.S. Dist. LEXIS 40034, at *7 (D.N.J. Apr. 23, 2010) (citing IMO Indus., 155 F.3d at 259).  To satisfy the third prong of the effects test, a plaintiff must:  (1) "show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum;" and (2) "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  IMO Indus., 155 F.3d at 266.  "The unique relations among the defendant, the forum, the intentional tort, and the plaintiff may under certain circumstances render the defendant's contacts with the forum — which otherwise would not satisfy the requirements of due process — sufficient."  Id. at 265.  However, "[a] plaintiff's mere assertion that the defendant knew that the plaintiff's principal place of business was located in the forum is insufficient to satisfy the third prong of the test."  Lawn Doctor, Inc. v. Branon, No. 07-4735, 2008 U.S. Dist. LEXIS 39095, at *16 (D.N.J. May 14, 2008) (citing IMO Indus., 155 F.3d at 265) (internal quotation marks and modification omitted).

### III.    DISCUSSION

VTWM challenges this Court's jurisdiction on several substantive fronts.  First, VTWM

8

argues that because its only contacts with New Jersey are "telephone calls initiated to Mr. Marti by World[S]cape," VTWM lacks the minimum contacts necessary for specific jurisdiction. (Moving Br. 16-17).  Second, VTWM argues that because WorldScape "offers no evidence that [VTWM] specifically targeted New Jersey when committing the alleged fraud," the effects test is not satisfied.  (Reply Br. 5).  Third, VTWM argues that it "would not be fair within the meaning of the due process clause" to exercise jurisdiction over their company because "forcing [VTWM] to defend this action in New Jersey imposes a substantial burden, particularly given that [VTWM] had no involvement with the fraud alleged to have been perpetrated upon World[S]cape by . . . Lambert and Neely."  (Moving Br. 19).

WorldScape argues that this Court has personal jurisdiction over its claims against VTWM.[9]  First, WorldScape argues that VTWM has the minimum contacts necessary for specific jurisdiction because VTWM purposefully conveyed fraudulent information to WorldScape through Marti.  (Opp'n Br. 18).  Second, WorldScape argues that the effects test is satisfied because VTWM expressly aimed tortious conduct at New Jersey such that "no other jurisdiction could have been the focus of VTWM's wrongdoing."  (Opp'n Br. 23).  Third, WorldScape argues that fair play and substantial justice support the exercise of jurisdiction over VTWM.  (Opp'n Br. 27).  Finally, WorldScape argues that in the event that the Court does not find a basis for personal jurisdiction over VTWM, the Court should permit WorldScape to engage in limited jurisdictional discovery.  (Opp'n Br. 35).

### A.     Specific Jurisdiction

WorldScape's allegations do not establish a basis for the Court to exercise traditional specific jurisdiction over VTWM.  As previously mentioned, a non-resident defendant must

---

[9] It should be noted that "WorldScape concedes that [without discovery,] it cannot nor did it intend to subject VTWM to suit in New Jersey under a theory of 'general jurisdiction.'"  (Opp'n Br. 11).  Thus, the Court need not address at this time whether general jurisdiction can be exercised over VTWM as a basis for personal jurisdiction.

purposefully establish minimum contacts in the forum state to be subject to personal jurisdiction. See Burger King Corp., 471 U.S. at 474. Moreover, a plaintiff's unilateral activity does not establish the requisite minimum contacts necessary to exercise personal jurisdiction over a non-resident defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980). Here, WorldScape does not allege that VTWM at any time initiated contact with their company. Rather, all telephone calls between Rogina and Marti were placed by Rogina. Moreover, there is no evidence that VTWM ever initiated contact with WorldScape by any other means. Finally, there is also no indication that VTWM purposefully directed its activities at New Jersey or created a substantial connection with New Jersey. Thus, the facts do not support specific jurisdiction.

WorldScape relies on Lebel v. Everglades Marina, Inc., 558 A.2d 1252 (N.J. 1989), in arguing that its fraud claim establishes personal jurisdiction over VTWM. (Opp'n Br. 13). In Libel, the plaintiff, a New Jersey buyer, purchased a boat from the defendant, a Florida seller. Id. at 1253. Prior to that transaction, the defendant solicited the plaintiff through multiple phone calls to the plaintiff's New Jersey home over two years. Id. When the plaintiff discovered possible fraud in connection with the boat sale, he filed an action against the defendant in a New Jersey Superior Court. Id. at 1253-54. The defendant filed a motion to dismiss for lack of personal jurisdiction, and the trial court denied that motion. Id. The New Jersey Appellate Division reversed and held that there were insufficient contacts to establish jurisdiction. Id. The plaintiff appealed. Id.

To determine whether the defendant had minimum contacts with New Jersey, the New Jersey Supreme Court asked if "the defendant's conduct and connection with the forum State were such that he should [have] reasonably anticipate[d] being haled into court there." Id. at

1255 (citation and internal quotation marks omitted). In finding that the defendant's activities in regard to the boat sale established minimum contacts with New Jersey, the Supreme Court highlighted the fact that: (1) the defendant telephoned the plaintiff in New Jersey and made fraudulent representations; (2) the defendant "mailed the contract to the [plaintiff] in New Jersey for signing in New Jersey, and received payment from the plaintiff;" and (3) the defendant had knowledge of the plaintiff's residence in New Jersey. Id. at 1256-57 (citations and internal quotation marks omitted). Based on those facts, the Supreme Court held that the "defendant was well aware that this sale would have direct consequences in New Jersey such that it should have been aware of the possibility of litigation arising in that forum." Id.

Here, VTWM could not have reasonably anticipated that their company would be haled into a New Jersey court. Unlike the defendant in Libel, VTWM neither solicited nor mailed anything to WorldScape in New Jersey. Nor did VTWM initiate any calls to WorldScape. Rather, the record shows that all of the telephone calls between Rogina and Marti were placed by Rogina. Additionally, the allegedly forged Good Standing Letter was sent via email from Sails to WorldScape, not from VTWM to WorldScape. (See Aff. of Peter Rogina Ex. B at 2). Therefore, because VTWM neither initiated contact with WorldScape nor created a substantial connection with New Jersey, the Court cannot exercise specific jurisdiction over VTWM.[10]

### B.   The Effects Test

WorldScape's allegations do not establish a basis for this Court to exercise personal jurisdiction over VTWM under the effects test. As previously mentioned, to satisfy the third

---

[10] The other cases that WorldScape relies on parallel Libel in that the defendants in each of those cases directly initiated contact with each plaintiff. See, e.g., Print Data Corp. v. Morse Fin., Inc., No. 01-4430, 2002 U.S. Dist. LEXIS 14577, at *11 (D.N.J. July 12, 2002) (exercising personal jurisdiction where defendants directed an agreement into New Jersey, initiated multiple telephone conferences in which fraudulent representations were made, and intended to direct approximately $1,500,000 in financing into New Jersey); Miller v. McMann, 89 F. Supp. 2d 564, 567-68 (D.N.J. 2000) (exercising personal jurisdiction because plaintiff alleged defendants instructed real estate agents/defendants to travel to New Jersey to obtain plaintiff's signature on a quitclaim deed in order to defraud her).

prong of the effects test inquiry, WorldScape must show that VTWM knew that WorldScape would suffer the brunt of the harm caused by the alleged tortious conduct in New Jersey and point to specific activity indicating that VTWM expressly aimed its tortious conduct at New Jersey. IMO Indus., 155 F.3d at 266. WorldScape argues that the effects test is satisfied because VTWM expressly aimed tortious conduct at New Jersey such that "no other jurisdiction could have been the focus of VTWM's wrongdoing." (Opp'n Br. 23).

WorldScape relies on Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001). (Opp'n Br. 19). In Remick, the plaintiff, an attorney, was originally approached by the defendants — a professional boxer, his counsel, and the firm with which counsel was associated — to represent the boxer in negotiations. Id. at 252. After a disagreement between the plaintiff and the boxer over negotiations regarding a televised fight, the boxer sent the plaintiff a letter termininating his representation. Id. at 253. The plaintiff brought a lawsuit against the defendants alleging breach of contract, defamation, and tortious interference with contract arising out of the plaintiff's representation of the boxer. Id. at 254. The district court dismissed the complaint against the individual defendants for lack of personal jurisdiction and against the law firm for failure to state a claim. Id. at 252. The plaintiff appealed. Id. at 254.

The Third Circuit concluded that the individual defendants expressly aimed their tortious conduct at the plaintiff's forum state. In so doing, the Third Circuit found significant that the plaintiff must have felt the brunt of the harm in the forum state because his business was based there. Id. at 260. Moreover, the Third Circuit highlighted the fact that the individual defendants' conduct, such as the dissemination of defamatory information regarding the plaintiff's skill and ability, were designed to interfere with the plaintiff's contractual relations and that the individual defendants harmed the plaintiff in the forum state. Id.

Here, WorldScape does not meet its prima facie burden under the effects test. Accepting WorldScape's allegations as true, the fact that VTWM, through Marti, knew that WorldScape was a New Jersey corporation is insufficient to establish personal jurisdiction. Rather, WorldScape must show that VTWM, through Marti, knew WorldScape would suffer the brunt of the harm in New Jersey, and that VTWM specifically intended to aim its conduct at New Jersey. WorldScape does not make either showing. Unlike the defendants in Remick, VTWM did not at any time approach WorldScape on its own volition and provide fraudulent information. Furthermore, VTWM did not intend to target New Jersey such that WorldScape would feel the brunt of the harm in New Jersey. Thus, WorldScape's reliance on Remick is misplaced.[11]

### C. Limited Jurisdictional Discovery

Generally, "although the plaintiff bears the burden of establishing personal jurisdiction, a court should assist the plaintiff by allowing jurisdictional discovery unless the claim of jurisdiction is 'clearly frivolous.'" Yearwood v. Turner Constr. Co., No. 09-5945, 2011 U.S. Dist. LEXIS 14818, at *16 (E.D. Pa. Feb. 15, 2011) (citing Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 336 (3d Cir. 2009)). Furthermore, jurisdictional discovery is "particularly appropriate where the defendant is a corporation." Metcalfe, 566 F.3d at 336. "If the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318

---

[11] WorldScape also relies on Lawn Doctor, Inc., in which the court found that the defendant's tortious conduct was expressly aimed at the plaintiff because of multiple phone calls to the plaintiff in New Jersey. Lawn Doctor, Inc., 2008 U.S. Dist. LEXIS 39095, at *6. As VTWM points out, "[a]dopting World[S]cape's view of the 'effects test' would render every putative defendant subject to specific jurisdiction in New Jersey merely because an intentional tort is alleged, with the harm claimed to have been suffered in the forum." (Reply Br. 7). Without some evidence of a specific intent to target WorldScape in New Jersey, the Court does not have personal jurisdiction over VTWM under the effects test.

13

F.3d 446, 456 (3d Cir. 2003)) (internal quotation marks omitted).  "In order to demonstrate that the claim is not clearly frivolous, the plaintiff must present factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state."  Lasala v. Marfin Popular Bank Pub. Co., 410 F. App'x 474, 478 (3d Cir. 2011) (quoting Toys "R" Us, Inc., 318 F.3d at 456) (internal quotation marks omitted).  "The precise scope of discovery to be permitted is left to the sound discretion of the district court, but it must be broad enough to allow [the party] to pursue both the 'doing business' and the 'minimum contacts' theories, at least until one or the other is conclusively ruled out."  Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances, 723 F.2d 357, 363 (3d Cir. 1983).

Although WorldScape has not formally moved for jurisdictional discovery, in their brief opposing VTWM's motion, they asserted the need for jurisdictional discovery, which the Court will construe as a request for such discovery.  See Renner v. Lanard Toys Ltd., 33 F.3d 277, 283 (3d Cir. 1994) (asserting that although plaintiffs had failed to make formal discovery requests, they were entitled to conduct jurisdictional discovery because they had adequately preserved their position that discovery was necessary in their brief opposing defendant's motion to dismiss).

The record before the Court contains sufficient non-frivolous allegations to support the request for jurisdictional discovery.  Although the Court finds no personal jurisdiction on the face of the Complaint, because VTWM is a corporation, jurisdictional discovery is particularly appropriate.  See Metcalfe, 566 F.3d at 336.  Moreover, jurisdictional discovery may reveal that VTWM knew that WorldScape was a New Jersey corporation and that their alleged misrepresentations would cause substantial harm to WorldScape in New Jersey.  Thus, jurisdictional discovery is appropriate.

14

**IV.     CONCLUSION**

For the foregoing reasons, the Court **DENIES** the motion to dismiss in favor of limited jurisdictional discovery. An appropriate Order shall follow.


Date:  8/05/2011  /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge